[No. B211881. Second Dist., Div. Three. Mar. 9, 2009.]

HEALTHMARKETS, INC., Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY, Respondent;
HARRY BERMAN, Real Party in Interest.

## COUNSEL

Sheppard Mullin Richter & Hampton, Andre J. Cronthall, Fred R. Puglisi and Catherine La Tempa for Petitioner.

No appearance for Respondent.

Law Offices of Robert K. Scott, D. Scott Mohney; Law Offices of Randy D. Curry and Randy D. Curry for Real Party in Interest.

**OPINION**

**CROSKEY, J.**—HealthMarkets, Inc. (HealthMarkets), challenges the denial of its motion to quash service of summons based on lack of personal jurisdiction. HealthMarkets is a nonresident holding company and has no contacts with the State of California. Mid-West National Life Insurance Company of Tennessee (Mid-West) is a subsidiary of a subsidiary of HealthMarkets. The trial court concluded that Mid-West's contacts with this state should be attributed to HealthMarkets for purposes of specific personal jurisdiction. We conclude that specific personal jurisdiction over a parent company based on the activities of its subsidiary or sub-subsidiary is appropriate only if the parent purposefully directed those activities at this state. Absent evidence that HealthMarkets purposefully directed the activities of Mid-West toward this state, we conclude that there is no basis for personal jurisdiction over HealthMarkets and that the motion to quash must be granted.

### FACTUAL AND PROCEDURAL BACKGROUND

HealthMarkets is a holding company incorporated in the State of Delaware, with its principal place of business in the State of Texas. HealthMarkets, LLC, is its subsidiary. Mid-West is a subsidiary of HealthMarkets, LLC.[1]

Harry Berman filed a complaint against HealthMarkets, Mid-West, and others in April 2008. He alleged that he was the victim of a fraudulent health insurance sales scheme perpetrated by defendants and that he was wrongfully denied insurance benefits. He alleged that he purchased insurance from an agent working for Cornerstone America (Cornerstone), that Cornerstone was a division of HealthMarkets, and that the policy was issued by Mid-West. He also alleged that HealthMarkets and Mid-West were alter egos. He alleged counts against HealthMarkets, Mid-West, and others for (1) breach of the implied covenant of good faith and fair dealing, (2) breach of the insurance contract, (3) false advertising, (4) negligent misrepresentation, and (5) intentional misrepresentation.

HealthMarkets moved to quash service of summons based on lack of personal jurisdiction. It filed a declaration describing the parent/subsidiary relationships noted above and also stating, among other things, that HealthMarkets had no office and no employees in California, neither owned nor leased property in this state, was not registered to do business in this state, was not involved in the marketing or administration of insurance issued to

---

[1] As hereafter used in this opinion, the term "subsidiary" includes a subsidiary of a subsidiary.

California residents, and did not participate in handling Berman's claims. The declaration also stated that Cornerstone was not a division of HealthMarkets.

Berman opposed the motion to quash, arguing that HealthMarkets conducted business in California through Mid-West as its alter ego. He also argued that Cornerstone was a division of HealthMarkets and that he had purchased insurance through a Cornerstone agent. He submitted a report entitled "Multi-State Market Conduct Examination of the HealthMarkets, Inc. Insurance Companies" (Market Report); an annual report and a form 8-K purportedly filed with the United States Securities and Exchange Commission in 2004 by a company known as UICI; and pages purportedly printed from Internet sites of UICI, Cornerstone, and Careerbuilder.com. He argued that statements in those materials showed that HealthMarkets owned and controlled Cornerstone and had trained the insurance agent who sold him an insurance policy. He also requested a continuance of the hearing to allow him to conduct discovery on jurisdictional issues if the court was inclined to grant the motion to quash. Berman filed an amended complaint in October 2008, alleging the same five counts as the original complaint.

HealthMarkets argued in reply that the term "UICI" as used in the securities filings referred to the parent and its subsidiaries, that the Internet sites and Market Report used the term "HealthMarkets" in the same manner, and that those documents were not evidence of HealthMarkets's contacts with California. HealthMarkets also argued that Berman had failed to present any evidence to support his alter ego allegations and failed to support his request for discovery. HealthMarkets filed evidentiary objections to the documents submitted by Berman based on lack of authentication, relevance, and hearsay.

The trial court stated in its minute order that the declaration filed by HealthMarkets showed that HealthMarkets was a holding company, that it had no contacts with California, and that it was not involved in the insurance transaction that is the subject of the complaint. The court stated that Berman had failed to "provide any evidence beyond that presented by the defendant," and that the documents submitted by Berman merely showed the same parent/subsidiary relationships described in the moving papers. The court nonetheless found a basis for specific personal jurisdiction.

Citing *Bresler v. Stavros* (1983) 141 Cal.App.3d 365, 369 [189 Cal.Rptr. 58] (*Bresler*), the trial court stated that a nonresident defendant may be subject to personal jurisdiction if it "intentionally engage[s] in local activities that the forum state treats as exceptional and subject to special regulation." The court stated further, "California has a strong interest in providing its residents with effective redress against insurers. [Citation.]"

The trial court cited *DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080 [128 Cal.Rptr.2d 683] (*DVI*) for the proposition that a parent company's ownership of a subsidiary, " 'without more,' " does not subject the parent to personal jurisdiction based on the subsidiary's forum contacts. It stated that Berman had failed to present evidence demonstrating any of the three circumstances described in *DVI* as sufficient to establish personal jurisdiction over a parent company based on a subsidiary's forum contacts. The trial court described those three circumstances as " 'alter ego,' " " 'representative services,' " and " 'subsidiary is mere agent.' " It stated, however, that Berman was entitled to conduct discovery on those issues. It stated further that the circumstances justifying the exercise of personal jurisdiction over a parent company were not limited to those three circumstances. The trial court concluded as a matter of law that, in light of California's "strong policy regarding insurance," an insurer's contacts with the State of California may be attributed to the insurer's parent company for purposes of specific personal jurisdiction. The court therefore denied the motion to quash, and overruled all of HealthMarkets's evidentiary objections.

HealthMarkets petitioned this court for an extraordinary writ. We determined that the matter deserved immediate appellate review and issued an order to show cause.

## CONTENTIONS

HealthMarkets contends (1) its mere ownership of an insurance company subsidiary does not justify the exercise of specific personal jurisdiction over HealthMarkets in California based on its subsidiary's contacts in this state, and (2) the overruling of its evidentiary objections was error.

## DISCUSSION

### 1. *Constitutional Limits on the Exercise of Personal Jurisdiction*

A California court may exercise personal jurisdiction over a nonresident defendant to the extent allowed under the state and federal Constitutions. (Code Civ. Proc., § 410.10.) The exercise of personal jurisdiction is constitutionally permissible only if the defendant has sufficient "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend 'traditional notions of fair play and substantial justice.' [Citations.]" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316 [90 L.Ed. 95, 66 S.Ct. 154]; accord, *Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 268 [127 Cal.Rptr.2d 329, 58 P.3d 2] (*Pavlovich*).) In other words, the defendant's contacts with the forum state must be such that the defendant had " 'fair warning' " that its activities might subject it to personal jurisdiction in

the state. (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 472 [85 L.Ed.2d 528, 105 S.Ct. 2174] (*Burger King*); accord, *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286, 297 [62 L.Ed.2d 490, 100 S.Ct. 559].) "In judging minimum contacts, a court properly focuses on 'the relationship among the defendant, the forum, and the litigation.' [Citations.]" (*Calder v. Jones* (1984) 465 U.S. 783, 788 [79 L.Ed.2d 804, 104 S.Ct. 1482].) "Each defendant's contacts with the forum State must be assessed individually." (*Id.* at p. 790.)

■ A defendant that has substantial, continuous, and systematic contacts with the forum state is subject to general jurisdiction in the state, meaning jurisdiction on any cause of action. (*Perkins v. Benguet Mining Co.* (1952) 342 U.S. 437, 445–446 [96 L.Ed. 485, 72 S.Ct. 413]; see *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 [58 Cal.Rptr.2d 899, 926 P.2d 1085] (*Vons*).) Absent such extensive contacts, a defendant may be subject to specific jurisdiction, meaning jurisdiction in an action arising out of or related to the defendant's contacts with the forum state. (*Helicopteros Nacionales de Columbia v. Hall* (1984) 466 U.S. 408, 414, fn. 8 [80 L.Ed.2d 404, 104 S.Ct. 1868]; *Vons, supra*, 14 Cal.4th at p. 446.) Specific jurisdiction depends on the quality and nature of the defendant's forum contacts in relation to the particular cause of action alleged. (*Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147–148 [127 Cal.Rptr. 352, 545 P.2d 264].)

■ A nonresident defendant is subject to specific personal jurisdiction only if (1) the defendant purposefully availed itself of the benefits of conducting activities in the forum state; (2) the controversy arises out of or is related to the defendant's forum contacts; and (3) the exercise of jurisdiction would be fair and reasonable. (*Burger King, supra*, 471 U.S. at pp. 472, 475–478; *Pavlovich, supra*, 29 Cal.4th at p. 269.) "These guidelines are not susceptible of mechanical application, and the jurisdictional rules are not clear-cut. Rather, a court must weigh the facts in each case to determine whether the defendant's contacts with the forum state are sufficient. (*Burger King*, [*supra*, 471 U.S.] at pp. 478–479, 486, fn. 29 [105 S.Ct. at pp. 2185–2186, 2189–2190]; *Kulko v. California Superior Court* (1978) 436 U.S. 84, 89, 92 [56 L.Ed.2d 132, 98 S.Ct. 1690, 1695, 1696–1697]; *Vons*[, *supra*, 14 Cal.4th] at p. 450.)" (*Bridgestone Corp. v. Superior Court* (2002) 99 Cal.App.4th 767, 774 [121 Cal.Rptr.2d 673].)

## 2. Standard of Review

■ A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to demonstrate facts establishing a basis for personal jurisdiction. (*Snowney v. Harrah's Entertainment, Inc.*

(2005) 35 Cal.4th 1054, 1062 [29 Cal.Rptr.3d 33, 112 P.3d 28] (*Snowney*).) If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable. (*Ibid.*) If there is no conflict in the evidence, the question whether a defendant's contacts with California are sufficient to justify the exercise of personal jurisdiction in this state is a question of law that we review de novo. (*Ibid.*) If there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings under the substantial evidence standard. (*Vons, supra,* 14 Cal.4th at p. 449.)

The trial court here based its ruling not on a finding that HealthMarkets purposely directed its activities at California, but on its conclusion as a matter of law that the company's ownership, through a subsidiary, of an insurer that conducted activities in this state justified the exercise of specific personal jurisdiction over HealthMarkets as the parent company. We independently review that legal conclusion. (*Snowney, supra,* 35 Cal.4th at p. 1062.)

### 3. *The Mere Ownership of a Subsidiary Does Not Constitute Purposeful Availment*

 " 'The purposeful availment inquiry . . . focuses on the defendant's intentionality. [Citation.] This prong is only satisfied when the defendant purposefully and voluntarily directs his activities toward the forum so that he should expect, by virtue of the benefit he receives, to be subject to the court's jurisdiction based on' his contacts with the forum. [Citation.]" (*Pavlovich, supra,* 29 Cal.4th at p. 269.)

"[P]urposeful availment occurs where a nonresident defendant ' "purposefully direct[s]" [its] activities at residents of the forum' (*Burger King, supra,* 471 U.S. at p. 472), ' "purposefully derive[s] benefit" from' its activities in the forum (*id.* at p. 473), 'create[s] a "substantial connection" with the forum' (*id.* at p. 475), ' "deliberately" has engaged in significant activities within' the forum (*id.* at pp. 475–476), or 'has created "continuing obligations" between [itself] and residents of the forum' (*id.* at p. 476). By limiting the scope of a forum's jurisdiction in this manner, the ' "purposeful availment" requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts . . . .' (*Id.* at p. 475.) Instead, the defendant will be subject to personal jurisdiction only if ' "it has clear notice that it is subject to suit there, and can act to alleviate the risk of burdensome litigation by procuring insurance, passing the expected costs on to customers, or, if the risks are too great, severing its connection with the state." ' (*Pavlovich,* at p. 269, quoting *World-Wide Volkswagen, supra,* 444 U.S. at p. 297.)" (*Snowney, supra,* 35 Cal.4th at p. 1063.)

■ The mere ownership of a subsidiary does not subject a nonresident parent company to specific personal jurisdiction based on the subsidiary's forum contacts. Ownership of a subsidiary alone does not constitute purposeful availment. Rather, purposeful availment requires some manner of deliberately directing the subsidiary's activities in, or having a substantial connection with, the forum state. *Burger King* stated in dicta, "We have previously noted that when commercial activities are 'carried on in behalf of' an out-of-state party those activities may sometimes be ascribed to the party, *International Shoe Co. v. Washington*, 326 U.S. 310, 320 . . . , at least where he is a 'primary participant' in the enterprise and has acted purposefully in directing those activities, *Calder v. Jones*, 465 U.S., at [page] 790." (*Burger King, supra,* 471 U.S. at p. 479, fn. 22.) Similarly, *Empire Steel Corp. v. Superior Court* (1961) 56 Cal.2d 823, 831 [17 Cal.Rptr. 150, 366 P.2d 502] held that specific personal jurisdiction over a foreign parent corporation was established based on the parent's "manipulation" and control of its California subsidiary to the detriment of the subsidiary's creditors. ■ Citing these authorities, we recently stated, "activities that are undertaken on behalf of a defendant may be attributed to that defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities toward the forum state. [Citations.]" (*Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 981 [81 Cal.Rptr.3d 535] (*Anglo Irish*).)

■ Consistent with these authorities and the requirements for purposeful availment explained above, and particularly the "focus[] on the defendant's intentionality" (*Pavlovich, supra,* 29 Cal.4th at p. 269), we conclude as follows: A parent company purposefully avails itself of forum benefits through the activities of its subsidiary, as required to justify the exercise of specific personal jurisdiction, if and only if the parent deliberately directs the subsidiary's activities in, or having a substantial connection with, the forum state. Only in those circumstances should the parent company "reasonably anticipate being haled into court" (*World-Wide Volkswagen Corp. v. Woodson, supra,* 444 U.S. at p. 297) in the forum state based on the activities of its subsidiary.

■ California courts have held that the mere ownership of a subsidiary does not subject a nonresident parent company to general personal jurisdiction based on the subsidiary's forum contacts. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540 [99 Cal.Rptr.2d 824]; *DVI, supra,* 104 Cal.App.4th at p. 1092.) Several courts have held or suggested, however, that principles of "alter ego" and "agency," including the "representative services" doctrine, can justify the exercise of general personal jurisdiction over a nonresident defendant. (E.g., *Sonora Diamond, supra,* at pp. 537–543; *DVI, supra,* at pp. 1093–1094.) Moreover, some courts have applied the same reasoning to justify the exercise of specific personal jurisdiction. (*VirtualMagic Asia, Inc. v. Fil-Cartoons, Inc.* (2002) 99

Cal.App.4th 228, 244–246 [121 Cal.Rptr.2d 1]; *Magnecomp Corp. v. Athene Co.* (1989) 209 Cal.App.3d 526, 535–539 [257 Cal.Rptr. 278]; *Northern Natural Gas Co. v. Superior Court* (1976) 64 Cal.App.3d 983, 992–995 [134 Cal.Rptr. 850].) Citing these authorities and some of the scholarly commentary regarding "the inexact fit between rules of law designed to establish liability for the acts of another and an assessment of the defendant's contacts with the forum for purposes of establishing general or specific personal jurisdiction" (*Anglo Irish, supra,* 165 Cal.App.4th at p. 983, fn. 13), we concluded in *Anglo Irish*: "[R]eliance on state substantive law of agency and alter ego to determine the constitutional limits of specific personal jurisdiction is unnecessary and is an imprecise substitute for the appropriate jurisdictional question. The proper jurisdictional question is not whether the defendant can be liable for the acts of another person or entity under state substantive law, but whether the defendant has purposefully directed its activities at the forum state by causing a separate person or entity to engage in forum contacts." (*Id.* at p. 983.) We reaffirm that conclusion here and conclude that purposeful availment by a parent company through the acts of its subsidiary must be evaluated under the rule that we have stated.

### 4. *No Special Regulation or Interest Justifies the Exercise of Specific Personal Jurisdiction in These Circumstances*

The trial court relied on *Bresler, supra,* 141 Cal.App.3d 365, in ruling that California's strong interest in providing residents of this state with redress against insurers justified the exercise of specific personal jurisdiction over HealthMarkets. *Bresler* involved an action for breach of contract and other counts arising from the purchase and sale of stock in a medical group organized as a California professional corporation. One of the defendant purchasers, George Stavros, was an Arizona resident. Although he was licensed to practice medicine in California, Stavros declared that he did not intend to practice medicine in this state or to take part in the corporation's management, and that he purchased the stock solely for investment purposes. (*Id.* at p. 367.) A subsequent declaration by his attorney, however, acknowledged that Stavros had visited a clinic operated in California by the corporation and had worked in the clinic on one occasion. (*Ibid.*)

*Bresler* stated that Stavros sought the benefits and protections of California securities law by purchasing California securities, that he was permitted to purchase stock in the corporation only because he was licensed to practice medicine in California, and that he was subject to detailed regulations concerning transfer of the securities. (*Bresler, supra,* 141 Cal.App.3d at p. 369.) *Bresler* stated that the fact that Stavros had performed medical services at the clinic in California on one occasion also supported the conclusion that he had invoked the benefits of California law. (*Id.* at

pp. 369–370.) *Bresler* stated further that the practice of medicine in this state was subject to " 'special regulation' " and that a defendant's intentional participation in an activity that is subject to special regulation can support the exercise of jurisdiction. (*Id.* at p. 369, quoting *Hanson v. Denckla* (1958) 357 U.S. 235, 252 [2 L.Ed.2d 1283, 78 S.Ct. 1228].)[2] *Bresler* cited *Quattrone v. Superior Court* (1975) 44 Cal.App.3d 296, 306–309 [118 Cal.Rptr. 548], for the proposition that the Legislature's regulation of an activity can support the exercise of jurisdiction "even where the nonresident defendant's activities are not so closely connected to state-conferred benefits or facilitation of economic activity." (*Bresler, supra,* 141 Cal.App.3d at p. 369.) *Bresler* concluded that the purchase and sale of the corporation "was intimately related to California," and that Stavros had purposefully availed himself of forum benefits. (*Id.* at pp. 370–371.) *Bresler* also concluded that the exercise of jurisdiction would be fair and reasonable, in part because California "has a strong interest in policing the propriety of transactions transferring ownership in medical corporations."[3] (*Bresler,* at p. 371.) *Bresler* therefore concluded that the granting of the motion to quash service of summons was error. (*Id.* at p. 372.)

*Quattrone v. Superior Court, supra,* 44 Cal.App.3d 296, involved the acquisition of a foreign corporation and the exchange of shares in that

---

[2] *McGee v. International Life Ins. Co.* (1957) 355 U.S. 220, 223 [2 L.Ed.2d 223, 78 S.Ct. 199] held that a California court could exercise personal jurisdiction over a foreign insurer in an action by a California resident on an insurance contract where the insurance contract had a substantial connection with this state. California statutes, Insurance Code section 1610 et seq., extended personal jurisdiction to foreign corporations in actions on insurance contracts with California residents. (*McGee, supra,* at p. 221 & fn. 1.) *Hanson v. Denckla, supra,* 357 U.S. 235, involved a Florida action concerning the validity of a trust agreement. (*Id.* at p. 243.) *Hanson* stated that, unlike the insurance contract in *McGee,* the trust agreement in *Hanson* had no connection with the forum state. (*Hanson, supra,* at pp. 251–252.) Accordingly, *Hanson* concluded that the trustee did not purposefully avail himself of the privilege of conducting activities within the forum state and that there was no basis for personal jurisdiction. (*Id.* at pp. 252–254.) *Hanson* also distinguished *McGee* on the ground that the forum state in *McGee* had enacted "special legislation" extending personal jurisdiction to "nonresidents engaged in an activity that the State treats as exceptional and subjects to special regulation. [Citations.]" (*Hanson, supra,* at p. 252.) This is the language quoted in *Bresler, supra,* 141 Cal.App.3d at page 369. Neither *Hanson* nor *McGee* held or suggested that " 'special regulation' " alone could justify the exercise of personal jurisdiction over a nonresident defendant absent purposeful availment.

[3] The forum state's interest in adjudicating the dispute is one of the factors that a court must consider in determining whether the exercise of jurisdiction would be fair and reasonable. (*Asahi Metal Industry Co. v. Superior Court* (1987) 480 U.S. 102, 112 [94 L.E.2d 92, 107 S.Ct. 1026].) The intensity of the defendant's contacts with the state and the reasonableness of the exercise of jurisdiction are inversely related: The greater the intensity of the defendant's contacts, the more readily the reasonableness of the exercise of jurisdiction can be established. (*Burger King, supra,* 471 U.S. at p. 477.) Similarly, the stronger the showing of reasonableness of the exercise of jurisdiction, the lesser the degree of contacts required to establish purposeful availment. (*Ibid.*)

corporation for shares in the plaintiff, a California corporation. The defendant participated in the exchange and allegedly misrepresented the profits of the foreign corporation for the purpose of obtaining additional shares in the plaintiff. (*Id.* at pp. 298–300.) *Quattrone* stated that the commission of an act outside of California with the intention of causing an effect in this state justified the exercise of specific personal jurisdiction, provided that the nature of the effects and of the defendant's relationship to this state made the exercise of jurisdiction fair and reasonable. (*Id.* at pp. 303–304.) *Quattrone* stated that those conditions were satisfied and the exercise of jurisdiction was fair and reasonable "whenever (a) the effects are of a nature 'that the State treats as exceptional and subjects to special regulation,' or (b) the defendant has, in connection with his causing such effects in the forum state, invoked 'the benefits and protections of its laws.' " (*Id.* at p. 306, quoting *Hanson v. Denckla, supra*, 357 U.S. at p. 252.)

*Quattrone v. Superior Court, supra*, 44 Cal.App.3d 296, stated that the evidence supported the conclusion that the defendant intended to cause the plaintiff, a California corporation, to issue additional shares. (*Id.* at p. 306.) *Quattrone* concluded that such an effect was a matter that this state treated as exceptional and subjected to special regulation because California securities law required a permit for the issuance of those shares. (*Id.* at pp. 306–307.) *Quattrone* stated that one of the conditions for the issuance of a permit was that the transaction be fair and equitable to the persons acquiring the new shares, and concluded further that the defendant sought the benefits and protections of California law by participating in the transaction. (*Id.* at p. 307.) The court therefore concluded that the denial of the motion to quash service of summons was proper. (*Id.* at pp. 298, 307.)

The California Supreme Court in *Pavlovich, supra*, 29 Cal.4th 262, explained that the effects test, as adopted by the United States Supreme Court in *Calder v. Jones, supra*, 465 U.S. 783, is a means to establish purposeful availment. (*Pavlovich, supra*, 29 Cal.4th at pp. 269, 272.) The defendant in *Pavlovich* posted on the Internet the source code of a computer program that circumvented the encryption of data on DVD's so as to allow copying of the data. (*Id.* at p. 267.) The defendant's sole contact with California was that he had posted the source code on a site accessible to anyone with Internet access. (*Id.* at pp. 273–274.) *Pavlovich* stated that the intentional acts of a nonresident defendant committed outside of California are sufficient to establish purposeful availment under the effects test only if the defendant expressly aimed or intentionally targeted the conduct at California with the knowledge that the conduct would cause harm in this state. (*Id.* at pp. 270–273.) *Pavlovich* held that the defendant's knowledge that his conduct might cause third parties to engage in conduct that would harm industries based in California was insufficient to establish the express aiming requirement.

Thus, the effects test requires a showing that the defendant purposefully directed its activities at California with the knowledge that its conduct would cause harm in this state. (*Pavlovich, supra*, 29 Cal.4th at pp. 272–273.) Berman has not shown that HealthMarkets purposefully directed its activities at California, either directly or through Mid-West or any other person or entity. California's strong interest in providing its residents with redress against insurers might help to establish the reasonableness of the exercise of jurisdiction if purposeful availment were shown (*Bresler, supra*, 141 Cal.App.3d at p. 371; *Quattrone v. Superior Court, supra*, 44 Cal.App.3d at p. 306), but cannot justify the exercise of personal jurisdiction over a nonresident defendant absent some form of purposeful availment by the defendant. We conclude that Berman failed to establish purposeful availment and therefore failed to establish a basis for personal jurisdiction over HealthMarkets. Accordingly, the denial of the motion to quash was error.[4]

### 5. *The Trial Court Should Rule on the Request for a Continuance to Conduct Discovery*

A trial court has the discretion to continue the hearing on a motion to quash service of summons for lack of personal jurisdiction to allow the plaintiff to conduct discovery on jurisdictional issues. (*Goehring v. Superior Court* (1998) 62 Cal.App.4th 894, 911 [73 Cal.Rptr.2d 105].) The trial court here never ruled on Berman's request for a continuance because it determined that a basis for specific personal jurisdiction had been established. The court should be given an opportunity to rule on Berman's request in light of our opinion. (*Ibid.*)

### DISPOSITION

Let a peremptory writ of mandate issue directing the trial court to (1) vacate its order denying the motion to quash service of summons, and (2) rule on Berman's request for a continuance to conduct discovery. If the court denies the request, the court must enter an order granting the motion to quash. If the court grants the request, the court must consider any additional evidence

---

[4] The court overruled all of HealthMarkets's objections to the evidence submitted by Berman in opposition to the motion to quash, but found that Berman's evidence failed to controvert the evidence submitted by HealthMarkets. We presume that the court found that the various materials submitted by Berman did not show either that Cornerstone was a division of HealthMarkets or that HealthMarkets controlled Cornerstone's activities in connection with the insurance transaction that is the subject of the complaint. Absent any showing that those findings were error, we need not decide whether the evidentiary objections should have been sustained.

submitted and rule on the motion to quash in light of the entire factual record and the views expressed in this opinion. The order to show cause is discharged. HealthMarkets is entitled to recover its costs in this appellate proceeding.

Klein, P. J., and Aldrich, J., concurred.