Filed 12/31/14  Herrera v. Modular Properties CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| EMANUEL HERRERA, | D065116 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2011-00092682-CU-PL-CTL) |
| MODULAR PROPERTIES, LIMITED, | |
| Defendant and Respondent. | |

APPEAL from an order of the Superior Court of San Diego County, Ronald L. Styn, Judge.  Affirmed.

The Law Office of Joseph A. Howell and Joseph A. Howell for Plaintiff and Appellant.

G&P | Schick, Malcolm D. Schick, John G. McKaveney and Danielle C. Loss for Defendant and Respondent.

Emanuel Herrera sued Modular Properties, Limited (Modular), a British Virgin Islands company, and several other defendants for injuries suffered after he obtained treatment at Boston Medical Group (BMG) for premature ejaculation.  Modular held the

patent for the treatment method utilized by BMG to treat Herrera. The trial court granted Modular's motion to quash service of the summons and complaint for lack of personal jurisdiction. Herrera appeals, contending he made a sufficient showing of Modular's direct and indirect contacts with California to subject it to personal jurisdiction. Herrera also argues the trial court abused its discretion by denying his request for a continuance to complete additional jurisdictional discovery. We find Herrera's arguments unavailing and affirm the trial court's order.

FACTUAL AND PROCEDURAL BACKGROUND

In 2009, Herrera learned about a treatment for premature ejaculation called the "Boston Method" on a Web site for BMG. Modular owned the trademark for the Boston Method and a patent for the treatment method associated with that mark. Modular had licensed its intellectual property to North American Men's Health (North American) who in turn licensed it to Boston Men's Health Center (Boston Men). Modular had the ability to terminate North American's sublicense to Boston Men. Boston Men provided management services and the use of Modular's intellectual property to BMG. Boston Men also established the Web site to promote the services of BMG.

Finca Verde was the hundred percent shareholder of North American, which was the hundred percent shareholder of Boston Men. Quoc Ha and another individual were the shareholders of Finca Verde. Ha was the president of Boston Men. He was also the president of Modular until he resigned in 2007. Modular did not have a bank account or any income.

2

After reviewing BMG's Web site, Herrera called the number provided on the Web site and was connected to a call center in Boston Men's office in Costa Mesa, California. The call center was part of the Boston Method. Through the Web site, Herrera eventually made an appointment at the BMG office in San Diego to seek treatment for premature ejaculation. Dr. Brennan saw Herrera and provided him the Boston Method of treatment. BMG also sold Herrera a supply of medicine, which he was told would be shipped to him. Herrera alleged that approximately two weeks after his BMG visit, he received a package from Meditech Laboratories, Inc. (Meditech) containing the supplies he needed to administer treatments at home.

Modular had formed Meditech, a pharmacy, which received management services from Boston Men. Ha was the president of Meditech. Modular created Meditech to improve patient confidentiality by allowing patients to receive prescriptions by having them shipped directly to their door. At the time Herrera received treatment at BMG, Modular did not have an ownership interest in Meditech. Rather, in 2008, Modular sold its shares in Meditech to Kim Tran.

BMG had access to manuals Modular created for marketing purposes. The manuals were created several years after Modular's licensing agreement with North American and placed in medical offices to show potential investors. The manuals consisted of a compilation of materials from books and other sources Ha and Dr. Sallis, Modular's president after Ha, collected over time. There was nothing in the manuals that was considered new or necessary for clinic operations. Around 2007 or 2008, Modular recalled, destroyed and discontinued the manuals because it did not make any progress in

3

attracting investors. Thus, BMG returned the manuals to Boston Men who destroyed them.

Herrera sued Modular and several other defendants, alleging that after he received treatment at BMG, he suffered permanent penile deformities and was unable to have sexual intercourse without the help of medication. Modular moved to quash service of the summons and complaint against it for lack of personal jurisdiction. In support of its motion, Modular submitted a declaration from Modular's current president, Imad Masri. According to Masri, Modular was strictly a holding company and did not have an office or engage in business in California.

In opposition to the motion, Herrera argued Modular purposefully availed itself of California's jurisdiction through its direct and indirect acts in the State. Specifically, Herrera claimed California could assert specific personal jurisdiction over Modular because its trademarks were used in California, it owned Meditech which supplied a large portion of BMG's prescriptions including the formula Herrera received, and Modular acted in California through Meditech, Boston Men, BMG, Ha and Masri. Herrera sought to establish jurisdiction under the principles of alter ego, agency and the representative services doctrine.

The trial court granted Modular's motion, finding Modular's knowledge that its trademarks were used in California was not sufficient to establish jurisdiction; Herrera failed to establish that Modular purposely directed its activities at the forum; and there was no evidence that Modular caused Meditech, North American, Boston Men or BMG

4

to engage in contacts in California. The trial court also denied Herrera's request for a continuance to depose Sallis.

## DISCUSSION

### I. *General Legal Principles and Standard of Review*

"'California courts may exercise personal jurisdiction on any basis consistent with the Constitution of California and the United States. [Citation.] The exercise of jurisdiction over a nonresident defendant comports with these Constitutions "if the defendant has such minimum contacts with the state that the assertion of jurisdiction does not violate '"traditional notions of fair play and substantial justice."'"' [Citations.] [¶] 'The concept of minimum contacts . . . requires states to observe certain territorial limits on their sovereignty. It "ensure[s] that the States, through their courts, do not reach out beyond the limits imposed on them by their status as coequal sovereigns in a federal system."' [Citation.] To do so, the minimum contacts test asks 'whether the "quality and nature" of the defendant's activity is such that it is "reasonable" and "fair" to require him to conduct his defense in that State.' [Citation.] The test 'is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite "affiliating circumstances" are present.'" (*Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061 (*Snowney*).)

"Under the minimum contacts test, '[p]ersonal jurisdiction may be either general or specific.' [Citation.] . . . 'When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation.'" [Citation.] A court may exercise specific jurisdiction over a nonresident defendant only

if: (1) "the defendant has purposefully availed himself or herself of forum benefits" [citation]; (2) "the 'controversy is related to or "arises out of" [the] defendant's contacts with the forum'" [citation]; and (3) "'the assertion of personal jurisdiction would comport with "fair play and substantial justice"'" [citation].'" (*Snowney*, *supra*, 35 Cal.4th at p. 1062.) The question of purposeful availment focuses on the defendant's intentionality, and is "'only satisfied when the defendant purposefully and voluntarily directs [its] activities toward the forum so that [it] should expect, by virtue of the benefit [it] receives, to be subject to the court's jurisdiction based on' [its] contacts with the forum." (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269 (*Pavlovich*).)

In *Pavlovich*, the California Supreme Court explained that to establish purposeful availment, it is generally not enough to assert that a defendant could foresee his or her conduct would have injurious effects in California. (*Pavlovich*, *supra*, 29 Cal.4th at pp. 270-271 ["[M]ost courts agree that merely asserting that a defendant knew or should have known that his intentional acts would cause harm in the forum state is not enough to establish jurisdiction . . . ."] & fn. 1; e.g., *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 474, fn. and italics omitted ["Although it has been argued that foreseeability of causing injury in another State should be sufficient to establish such contacts there when policy considerations so require, the Court has consistently held that this kind of foreseeability is not a 'sufficient benchmark' for exercising personal jurisdiction."].) The California Supreme court requires "additional evidence of express aiming or intentional targeting" to establish personal jurisdiction. (*Pavlovich*, at p. 273.)

6

A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to demonstrate facts establishing a basis for personal jurisdiction.  (*Snowney*, *supra*, 35 Cal.4th at p. 1062; *HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167-1168 (*HealthMarkets*).)  If the plaintiff satisfies that burden, the burden shifts to the defendant to show the exercise of jurisdiction would be unreasonable.  (*HealthMarkets*, at p. 1168; *Snowney*, at p. 1062.)

"'On review, we apply our independent judgment to the ultimate question of jurisdiction, but to the extent that the question of jurisdiction turns on factual issues, we are bound by the trial court's findings of fact if they are supported by substantial evidence.  [Citations.]  We have no power to substitute our own assessment of the facts for that of the trial court if substantial evidence supports [its] finding.  [Citation.]  That is a trial court function, not one for us as an appellate court.'"  (C*enterPoint Energy, Inc. v. Superior Court* (2007) 157 Cal.App.4th 1101, 1119; see also *HealthMarkets*, *supra*, 171 Cal.App.4th at p. 1168.)

## II. *Specific Jurisdiction*

Herrera makes various arguments to support his position that California can assert specific personal jurisdiction over Modular based on its direct contacts with the State, its relationship to Meditech, alter ego principles, agency, and the representative services doctrine.  As we shall explain, we reject these arguments.

## A.  Direct Contacts

Herrera argues California can assert personal jurisdiction over Modular because its trademarks were used in California, its intellectual property was advertised in California,

the advertisements showing BMG's California locations were included in Modular's trademark application to the United States Patent and Trademark Office, and Modular's manuals were placed in California medical offices to secure investors.

In order to determine if Modular purposefully availed itself of California's jurisdiction, we must determine whether it intentionally directed its activities toward the forum so that it should expect by virtue of the benefits it received to be subject to the court's jurisdiction. (*Pavlovich*, *supra*, 29 Cal.4th at p. 269.) Purposeful availment requires more than foreseeability of harm in the forum state. (*Id.* at pp. 270-271.) Rather, there must be additional evidence that the defendant expressly aimed or intentionally targeted its activities at the forum. (*Id.* at p. 273.)

Here, Herrera failed to present sufficient evidence that Modular directed its activities at the forum such that it should expect to be subject to the court's jurisdiction. Although Modular's trademark, the Boston Method, was used in California, the record lacks evidence that Modular itself specifically directed its activities toward the forum. Instead, Modular licensed its treatment method to North American who in turn licensed it to Boston Men. Boston Men provided management services and the use of Modular's intellectual property to BMG. Boston Men also promoted BMG through a Web site. We find no evidence in the record that Modular itself directly advertised or promoted the Boston Method in the forum. Rather, it appears Modular was merely a holding company.

We are also not convinced that Modular's inclusion of advertisements showing BMG's California locations in its trademark application to the United States Patent and Trademark Office subjects it to California's jurisdiction. That evidence is not sufficient

8

to show that Modular expressly aimed or intentionally targeted its activities at the forum. Instead, it shows other entities used the Boston Method mark in commerce.

Similarly, Modular's placement of manuals in California medical offices does not subject it to jurisdiction. The manuals were intended to obtain investors and did not contain anything new or necessary for clinic operations. Importantly, around 2007 or 2008, Modular recalled, discontinued and destroyed the manuals. Accordingly, at the time of Herrera's injury in 2009, the manuals were no longer in use at California medical offices.

Based on the foregoing, we conclude Herrera failed to demonstrate a basis for personal jurisdiction based on Modular's direct contacts with California.

B. Modular's Relationship to Meditech

Herrera asserts California can assert personal jurisdiction over Modular because of its ownership and involvement with Meditech. We reject this argument.

Modular sold its stock in Meditech to Kim Tran in 2008. Thus, at the time Herrera received treatment at BMG and any prescriptions from Meditech, Modular no longer had an ownership interest in Meditech. Even if Modular did own Meditech during the relevant time period, it is well settled that the mere ownership or control of a subsidiary operating within a state does not show purposeful availment or justify the imposition of jurisdiction over the parent in that state. (*Sonora Diamond Corp. v. Superior Court* (2000) 83 Cal.App.4th 523, 540-542 (*Sonora Diamond*).) Instead, a court must find that the parent itself has "purposefully availed itself of the protection and benefits of the forum state" (*Id.* at p. 552) or that there exists an alter ego or agency relationship between

9

the parent and subsidiary.  (*Id*. at pp. 541-542.)  Accordingly, we next consider principles of alter ego and agency.

C.  Alter Ego

"Ordinarily, a corporation is regarded as a legal entity, separate and distinct from its stockholders, officers and directors, with separate and distinct liabilities and obligations. . . .  Under the alter ego doctrine, . . . when the corporate form is used to perpetrate a fraud, circumvent a statute, or accomplish some other wrongful or inequitable purpose, the courts will ignore the corporate entity and deem the corporation's acts to be those of the persons or organizations actually controlling the corporation, in most instances the equitable owners. . . .  [¶]  In California, two conditions must be met before the alter ego doctrine will be invoked.  First, there must be such a unity of interest and ownership between the corporation and its equitable owner that the separate personalities of the corporation and the shareholder do not in reality exist.  Second, there must be an inequitable result if the acts in question are treated as those of the corporation alone."  (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 538.)

"'Among the factors to be considered in applying the doctrine are commingling of funds and other assets of the two entities, the holding out by one entity that it is liable for the debts of the other, identical equitable ownership in the two entities, use of the same offices and employees, and use of one as a mere shell or conduit for the affairs of the other.' [Citations.]  Other factors which have been described in the case law include inadequate capitalization, disregard of corporate formalities, lack of segregation of corporate records, and identical directors and officers.  [Citations.]  No one characteristic

10

governs, but the courts must look at all the circumstances to determine whether the doctrine should be applied." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 538-539.)

Here, to support his alter ego argument, Herrera points to evidence that Modular did not have a bank account, Boston Men paid for some of Modular's business expenses, Modular shared office space with North American and Boston Men, and Ha was an officer or director of Boston Men, Modular and Meditech.

However, Herrera did not establish the essential elements of the alter ego doctrine. First, there is no evidence that Modular had an ownership interest in North American, Boston Men, or BMG or that there was a unity of interest among them. Rather, the evidence shows that Modular never held stock in those entities. Further, in regard to Meditech, Modular transferred its stock to Tran in 2008, before Herrera's injuries. Moreover, interlocking officers and directors is insufficient to rebut the presumption of corporate separateness. (*Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 548-549.)

Second, Herrera failed to show an inequitable result from the recognition of Modular as a separate entity. Herrera claims injustice would result if Modular was not a defendant in this case because Ha would unilaterally terminate the licensing agreement, pay out accrued royalties and leave himself, North American, and Boston Men insolvent to judgment debtors. "The alter ego doctrine does not guard every unsatisfied creditor of a corporation but instead affords protection where some conduct amounting to bad faith makes it inequitable for the corporate owner to hide behind the corporate form. Difficulty in enforcing a judgment or collecting a debt does not satisfy this standard." (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 539.) In this case, even if Herrera

11

established he would be an unsatisfied creditor, which he has not, that is insufficient to satisfy the alter ego doctrine.

Based on the foregoing, we conclude Herrera failed to establish that California had jurisdiction over Modular based on alter ego principles.

D. Agency

With respect to agency, there is a presumption of corporate separateness between parent and subsidiary that must be overcome by clear evidence that the parent, in fact, controls the activities of the subsidiary. (*Sonora Diamond*, *supra*, 83 Cal.App.4th at pp. 540-542.) Mere ownership or control, without more, does not subject the parent to jurisdiction. (*Id.* at p. 540.) "'Control' in this context means the degree of direction and oversight normal and expected from the status of ownership; it comprehends such common characteristics as interlocking directors and officers, consolidated reporting, and shared professional services. [Citations.] The relationship of owner to owned contemplates a close financial connection between parent and subsidiary and a certain degree of direction and management exercised by the former over the latter." (*Sonora Diamond*, at pp. 540-541.) However, "where the nature and extent of the control exercised over the subsidiary by the parent is so pervasive and continual that the subsidiary may be considered nothing more than an agent or instrumentality of the parent, notwithstanding the maintenance of separate corporate formalities, jurisdiction over the parent may be grounded in the acts of the subsidiary/agent." (*Id.* at p. 541.)

Here, Herrera asserts California can assert jurisdiction over Modular based on agency principles because Modular indirectly promoted its brand through Boston Men

and Masri and caused its intellectual property to be placed in BMG's clinic to attract investors. Even if true, these facts do not demonstrate that Modular exercised such a degree of control over Boston Men or BMG such that those entities were nothing more than agents of Modular. (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 541.) Similarly, the evidence did not establish the necessary degree of control over Meditech to show it was an agent of Modular.

Herrera asserts jurisdiction based on agency is proper because the facts in this case are similar to *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969 (*Anglo Irish*). In that case, the court found specific jurisdiction over two foreign banks and a foreign trust company based on the activities of the managing director of one of the banks, the head of offshore trust operations for the other bank, and the managing director of the trust company. (*Id.* at pp. 975-976, 984.) Those individuals, at the direction of defendants, visited California for the purpose of soliciting investments for the defendants. (*Id.* at p. 984.) The *Anglo Irish* court concluded the defendants availed themselves of the forum's benefits because they "purposefully directed their activities at California residents by and through the individuals who visited California on their behalf." (*Ibid.*)

In the instant case, Herrera failed to present facts analogous to *Anglo Irish*. He does not point to evidence that Modular controlled the activities of Boston Men, BMG or Meditech for its benefit. Further, Herrera did not establish that Modular caused Boston Men, BMG or Meditech to engage in forum contacts. The evidence Herrera relies upon is not of such a nature that would allow California to assert jurisdiction over Modular.

13

E.  Representative Services Doctrine

Herrera argues California should assert jurisdiction over Modular based on the representative services doctrine, a variation of agency.  We reject this argument.

"The [representative services] doctrine supports the exercise of jurisdiction when the local subsidiary performs a function that is compatible with, and assists the parent in the pursuit of, the parent's *own* business, but the doctrine does not support jurisdiction where the parent is merely a holding company whose only business pursuit is the investment in the subsidiary. . . .  '[I]f a parent uses a subsidiary to do what it otherwise would have done itself, it has purposely availed itself of the privilege of doing business in the forum.  Jurisdiction over the parent is therefore proper.  [Citations.]  This contrasts to the case of a holding company.  In such a case, the subsidiary is not performing a function that the parent would otherwise have had to perform itself (the holding company could simply hold another type of subsidiary).  In such a case, imputing jurisdictional contacts would be improper.'"  (*Sonora Diamond*, *supra*, 83 Cal.App.4th at p. 543.)

The representative services doctrine does not apply in this case because Herrera did not establish that Modular was more than a holding company or that it engaged in business operations other than licensing its intellectual property to others.  We find no indication in the record that BMG, Boston Men, Meditech or any other relevant entity performed functions that Modular would have otherwise performed itself.  Accordingly, jurisdiction over Modular based on the representative services doctrine would be improper.

14

III. *Request for Continuance*

Herrera argues the trial court abused its discretion in denying his request for a continuance to complete jurisdictional discovery, namely to take Sallis's deposition.

We apply an abuse of discretion standard of review to the trial court's decision to deny Herrera a continuance in order to conduct discovery. (*In re Automobile Antitrust Cases I & II* (2005) 135 Cal.App.4th 100, 127 (*In re Automobile Antitrust*) ["A ruling on a motion to continue in order to allow additional time to discover jurisdictional facts lies in the trial court's discretion. . . .  [W]e will not reverse . . . unless we find a manifest abuse of that discretion."].)

"In order to prevail on a motion for a continuance for jurisdictional discovery, the plaintiff should demonstrate that discovery is likely to lead to the production of evidence of facts establishing jurisdiction." (*In re Automobile Antitrust*, *supra*, 135 Cal.App.4th at p. 127; see also *Beckman v. Thompson* (1992) 4 Cal.App.4th 481, 487 [trial court did not err in denying a continuance to pursue jurisdictional discovery where "[i]n light of the showings already made, the court could reasonably conclude further discovery would not likely lead to production of evidence establishing jurisdiction"].)

Here, Herrera moved to compel Sallis's deposition, asserting Sallis was Modular's person most knowledgeable for day-to-day affairs between 2007 and 2009.  The trial court denied the motion, finding Herrera failed to provide authority requiring Modular to produce Sallis, a former officer.  Thereafter, in his opposition to Modular's motion to quash, Herrera argued the court should defer its ruling until he had an opportunity to depose Sallis.  The court denied this request.

15

Herrera argues he needed Sallis's deposition because Sallis would "likely provide evidence of and insight, as to Modular's ownership of Meditech" and the circumstances surrounding the placement and removal of manuals in BMG's clinic.  Herrera failed to explain how Sallis's testimony would establish jurisdiction in light of the evidence already produced.  Thus, the trial court was well within its discretion in denying Herrera's request for a continuance.

DISPOSITION

The trial court's order is affirmed.  Modular is entitled to costs on appeal.

MCINTYRE, J.

WE CONCUR:

McCONNELL, P. J.

AARON, J.