Filed 10/31/25  Arenas v. Superior Court CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

| | |
|---|---|
| JOHN ARENAS,<br><br>Petitioner,<br><br>v.<br><br>THE SUPERIOR COURT OF LOS ANGELES COUNTY,<br><br>Respondent;<br><br>350 SOUTH GRAND AVENUE (LA), LLC,<br><br>Real Party in Interest. | B345320<br><br>(Los Angeles County Super. Ct. No. 24STCV25525) |

ORIGINAL PROCEEDINGS in mandate.  Richard L. Fruin, Judge.  Petition granted.

Nelson Mullins Riley & Scarborough and Ryan E. Cosgrove for Petitioner John Arenas.

No appearance for Respondent Superior Court of Los Angeles County.

Goodkin Law Group, Daniel L. Goodkin and Michael A. Shakouri for Real Party in Interest 350 South Grand Avenue (LA), LLC.

John Arenas (Arenas), a New York resident and defendant in the underlying breach of contract action brought by 350 South Grand Avenue (LA), LLC (South Grand) against defendant SLH-Los Angeles 2, LLC (SLH), challenges by way of petition the superior court's assertion of jurisdiction over him and denial of his motion to quash service of summons. The court found Arenas had sufficient contacts with California to justify personal jurisdiction. We disagree and issue the writ.

## BACKGROUND

In October 2024, South Grand sued SLH and Arenas for breach of contract, breach of fiduciary duty and fraud, alleging South Grand and SLH entered into a lease agreement pursuant to which SLH agreed to pay monthly rent in the amount of $22,592.60 in return for South Grand providing a 22,658 square foot premises in Los Angeles. South Grand alleged that SLH breached the agreement by failing to pay rent and other fees since April 2023.

South Grand also alleged Arenas used SLH as his alter ego, caused it to breach the lease, then depleted its funds to avoid anticipated contract damages. The lease agreement shows that Arenas signed it on behalf of SLH as an "authorized signatory." (Capitalization omitted.)

Arenas specially appeared to quash service of summons on the ground of lack of jurisdiction.

Arenas declared and later testified in jurisdictional discovery that he is a resident of New York; he is the chairman and CEO of Serendipity Labs, Inc. (Serendipity), which owned SLM LA2, LLC (SLM), which was one of SLH's two managing members; he signed the lease agreement on behalf of SLH as SLM's representative; and he sat on Serendipity's investment

2

committee when it recommended to SLM that it should close SLH's Los Angeles facility.

Roger Stone, Serendipity's chief financial officer, testified that neither SLM nor SLH had any employees and that SLH's revenues were used to fund its operations.

The trial court denied Arenas's motion to quash, finding he had sufficient contacts with California to make him subject to the court's jurisdiction."

Here, as in the trial court, Arenas argues jurisdiction is improper because he is a resident of New York and has no California contacts other than the lease agreement, which he signed only as SLH's representative, and is not employed by SLH, received no funds from it, had no authority to direct its operations, and did not personally decide to close SLH's Los Angeles facility. The decision to close the facility and not pay rent was made by SLH's managing members.

In opposition to the petition, and relying primarily on its unverified complaint and the trial court's rulings, South Grand contends Arenas: negotiated and "personally" signed the lease agreement; chose to conduct business in California to operate SLH's Los Angeles facility; derived benefits from the lease; sat on the committee that directed strategic decisions for SLH; and participated in major decisions about its fate, including the decision to shut down SLH's Los Angeles location.

South Grand also contends, supported only by its complaint and undisputed evidence about SLH's corporate parentage, that SLH is Arenas's alter ego.

## DISCUSSION

California's long-arm statute invests its courts with personal jurisdiction over a litigant on "any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10; see also *Cornelison v. Chaney* (1976) 16 Cal.3d 143, 147 (*Cornelison*).)  In effect, this statute extends jurisdiction over Arenas to the fullest extent permitted by the due process clause of the United States Constitution.  (*Kulko v. Superior Court* (1978) 436 U.S. 84, 91 (*Kulko*); *World-Wide Volkswagen Corp. v. Woodson* (1980) 444 U.S. 286 (*World-Wide*).)  The due process question at issue here is whether Arenas has sufficient "minimum contacts" with California such that the maintenance of the actions against him does not "offend 'traditional notions of fair play and substantial justice.' " (*International Shoe Co. v. Washington* (1945) 326 U.S. 310, 316.)

Due process requires the contacts (or relationship) between a nonresident defendant and the forum state to be such that it is fair and reasonable to require a defendant to submit to suit in the distant forum.  (*World-Wide*, *supra*, 444 U.S. at p. 292; *Cornelison*, *supra*, 16 Cal.3d at p. 147.)  "Implicit in this emphasis on reasonableness is the understanding that the burden on the defendant, while always a primary concern, will in an appropriate case be considered in light of other relevant factors, including the forum [s]tate's interest in adjudicating the dispute [citation]; the plaintiff's interest in obtaining convenient and effective relief" (*World-Wide*, *supra*, at p. 292), "the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and the shared interest of the several [s]tates in furthering fundamental substantive social policies [citation]."  (*Ibid.*)  "Like any standard that requires a

4

determination of 'reasonableness,' the 'minimum contacts' test of *International Shoe* is not susceptible of mechanical application; rather, the facts of each case must be weighed to determine whether the requisite 'affiliating circumstances' are present." (*Kulko*, *supra*, 436 U.S. at p. 92.)

South Grand bears the burden to prove by a preponderance of the evidence those facts establishing the requisite relationship for the exercise of personal jurisdiction. (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167 (*HealthMarkets*).) "To meet this burden, a plaintiff must do more than make allegations. A plaintiff must support its allegations with 'competent evidence of jurisdictional facts.' " (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 393.) A plaintiff must show "by a preponderance of the evidence . . . that the defendant has purposefully availed itself of the forum and the plaintiff's claims relate to or arise out of the defendant's forum-related contacts." (*Ibid*.) "If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (*HealthMarkets*, *supra*, at p. 1168.)

"If there are no evidentiary conflicts, the existence of jurisdiction is a legal question that calls for our independent review." (*Daimler Trucks North America LLC v. Superior Court* (2022) 80 Cal.App.5th 946, 954.)

### A. Arenas's Actions as a Corporate Officer Do Not Establish Jurisdiction

The execution of a contract on behalf of a corporation does not subject the signatory to California jurisdiction for an action upon the contract. (*Ruger v. Superior Court* (1981) 118 Cal.App.3d 427, 433 ["[f]or personal jurisdiction to lie, the character, quality, and nature of [the defendant's] activity must

5

bear a substantial relationship to the causes of action beyond that derived solely from his official position with the corporation"]; *Shearer v. Superior Court* (1977) 70 Cal.App.3d 424, 430; see *Lehigh Valley Industries, Inc. v. Birenbaum* (S.D.N.Y. 1975) 389 F.Supp. 798, 803-804 ["an individual's transaction of business within the state solely as an officer of a corporation does not create personal jurisdiction over that individual"]; *Schenin v. Micro Copper Corp.* (S.D.N.Y. 1967) 272 F.Supp. 523, 528 [individual who enters New York solely for the purpose of transacting business on behalf of a corporation is not subject to personal jurisdiction].)

Arenas is a New York resident who was served with summons outside California. The undisputed evidence establishes that he executed the lease agreement not in his individual capacity but on SLH's behalf, which does not constitute the sort of personal contact with California that would support jurisdiction in an action for breach of contract.

South Grand also alleges breach of fiduciary duty and several counts of fraudulent transfer against Arenas but adduces no evidence that Arenas had personal as opposed to representative contacts with California. The undisputed evidence shows Arenas merely sat on a Serendipity committee that recommended to SLH's managing members that the site be closed. This activity bears no substantial relationship to the causes of action alleged. (See *Ruger*, *supra*, 118 Cal.App.3d at p. 433 [jurisdiction will lie only where a corporate officer substantially causes the corporation to commit a tort].)

South Grand relies on *Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462 (*Burger King*) for the proposition that when an individual negotiates and executes an agreement with an out-

6

of-state corporation, the individual affiliates himself with the corporation's home state in a meaningful way.

*Burger King* is inapposite. There, the defendant entered into an agreement on his own behalf with Burger King, a Florida entity, to operate a restaurant in Michigan. Burger King terminated the franchise, but the defendant continued to operate the restaurant. When Burger King brought a breach of contract action in Florida, the defendant claimed Florida lacked personal jurisdiction because he was a Michigan resident and the claim did not arise within Florida. The court held jurisdiction existed over the defendant because he established a substantial and continuing relationship with Burger King's Florida headquarters by personally entering into the contract with Burger King. (*Burger King*, *supra*, 471 U.S. at p. 463.)

Whereas in *Burger King* the defendant entered into an agreement on his own behalf (*Burger King*, *supra*, 471 U.S. at p. 467 ["[b]y signing the final agreements, Rudzewicz obligated himself personally to payments exceeding $1 million over the 20-year franchise relationship"]), no evidence suggests that Arenas entered into the lease agreement on his own behalf or contractually obligated himself personally to pay the obligations under that lease agreement.

## B.    Alter Ego Jurisdiction

General jurisdiction may exist over a principal based upon his alter ego's contacts with the forum. (*DVI, Inc. v. Superior Court* (2002) 104 Cal.App.4th 1080, 1093.)

To establish jurisdiction rooted in an alter ego theory, South Grand relies on its own unverified allegations, Arenas's deposition testimony about the relationships among Arenas, Serendipity, SMH and SLH, and Stone's testimony that neither

7

SMH nor SLH had any employees. Allegations are not evidence, and Arenas's and Stone's testimony do not support either alter ego liability or personal jurisdiction.

South Grand argues that SLH was a shell company with no assets and Arenas controlled Serendipity's decisions and oversaw SLH's operations, but no evidence in the record supports the argument.

### C.    Conclusion

Because South Grand failed to show by a preponderance of the evidence that Arenas purposefully availed himself of the California forum and that South Grand's claims relate to or arise out of Arenas's forum-related contacts, the burden never shifted to Arenas to show that the exercise of jurisdiction would be unreasonable.

**DISPOSITION**

The petition is granted.  Let a peremptory writ of mandate issue directing the superior court to vacate its order denying petitioner's motion to quash service of summons and enter a new order granting the motion.

The parties shall bear their own costs.

NOT TO BE PUBLISHED.


                                        ROTHSCHILD, P. J.

We concur:



            BENDIX, J.



            M. KIM, J.

9