Filed 10/2/23  EHC Aspen Properties v. CCUR Holdings CA4/3

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| EHC ASPEN PROPERTIES, LLC,<br><br>  Plaintiff and Appellant,<br><br>    v.<br><br>CCUR HOLDINGS, INC. et al.,<br><br>  Defendants and Respondents. | G061474<br><br>(Super. Ct. No. 30-2021-01189890)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge.  Affirmed.

Stradling Yocca Carlson & Rauth, Justin N. Owens and Ahmad S. Takouche for Plaintiff and Appellant.

Morrison & Foerster, Mark David McPherson, James R. Sigel, Michael Komorowski, and Dan Marmalefsky for Defendants and Respondents.

\*          \*          \*

This is an appeal from an order granting a motion to quash service of summons for lack of personal jurisdiction. We affirm.

The case arises from an aircraft financing investment opportunity that turned out to be a Ponzi scheme. In a nutshell, the parties on both sides of the lawsuit sunk millions of dollars into the "investment," believing they were making fully refundable deposits that would be used to secure the conversion of passenger planes into cargo planes. Plaintiff EHC Aspen Properties, LLC (Aspen) invested about $3.7 million, and defendant CCUR Aviation Finance, LLC (CCURA) invested about $5.5 million. Neither recovered its money.

Rather than sue the individuals and entities who absconded with its investment, Aspen sued CCURA and others for breach of fiduciary duty, fraud, and related claims, asserting defendants wrongfully induced Aspen to invest in the Ponzi scheme. Defendants, none of which are located in California, moved to quash service of summons for lack of personal jurisdiction, and the trial court granted their motion.

We affirm. As explained below, Aspen failed to establish defendants purposefully availed themselves of California benefits so as to create personal jurisdiction.

**FACTS**

The details surrounding how the aircraft investment transactions worked and how the parties came to invest in the Ponzi scheme are disputed. Because of the narrow issue on appeal, we need not resolve those ambiguities and instead provide only a basic outline of what allegedly occurred.

CCUR Holdings, Inc. (CCURH) began investing in aircraft financing deals in 2018. These deals were brokered by nonparty South Aviation, Inc. (South Aviation) and its president Federico Machado, and the funds were held in escrow by nonparty Wright Brothers Aircraft Title, Inc. (Wright Brothers). Between August 2018 and June

2

2020, CCURH reportedly completed multiple deals, investing over $23 million in refundable deposits.

In August 2020, CCURA and its sole member CCURH (collectively, the CCUR Entities) decided to invest more funds with South Aviation, this time contributing about $5.5 million. One of the CCUR Entities' investors from previous South Aviation transactions—nonparty Eric Edidin of Edidin Partners, LLC—sent an e-mail introducing the CCUR Entities' president and chief executive officer, defendant Igor Volshteyn, to Edidin's longtime contact, Luis Serrano, as a possible additional investor. As part of that introduction, Edidin forwarded Serrano a nondisclosure agreement (NDA) and explained that once Serrano executed the NDA, Volshteyn would send Serrano an "information package" about the investment. It is unclear why Edidin facilitated this introduction between his fellow investor and his friend, but he later attested that "no one asked [him] to solicit other investors."

Serrano signed the NDA in his capacity as manager of Westbrook Management LLC in Irvine, California, and Volshteyn signed as president of CCURH. After the NDA was fully executed, Volshteyn e-mailed Serrano a PowerPoint presentation he had prepared about the "fully refundable aviation deposits" investment opportunity.

Serrano reviewed the materials from Volshteyn, discussed the investment opportunity with Edidin, and decided to invest about $3.7 million through his company, Aspen. According to Serrano, it was Volshteyn (not South Aviation or Wright Brothers) who prepared and submitted the letter agreements between Aspen and South Aviation and the escrow agreements between Aspen and Wright Brothers. Additionally, all of Aspen's communications about the investment were with Edidin and Volshteyn, not Machado or South Aviation.

Defendant JDS1, LLC (JDS1) also invested in the August 2020 aircraft financing opportunity. JDS1's managing member, Julian Singer, had been a friend and

3

business associate of Edidin for over a decade. At Edidin's suggestion, JDS1 and Aspen entered into a finder's fee agreement drafted by Edidin under which Aspen would pay JDS1 30 percent of any profits that Aspen received from its investment. This finder's fee agreement was made even though no representative of JDS1 ever met with, spoke with, or provided any services to Aspen or Serrano.

The 90-day term of the aircraft financing transaction was set to expire in November 2020, at which time the parties' principal investments would have been returned. In November, however, Edidin informed Serrano the other investors planned to reinvest their deposits for a two-month extension to January 2021 in exchange for an additional fee to be paid by South Aviation. After discussing the matter further with Edidin, Serrano decided to reinvest Aspen's deposit. Volshteyn then prepared the necessary reinvestment paperwork and coordinated its submission.

Shortly thereafter things fell apart. In January 2021, the CCUR Entities learned that federal authorities had frozen the assets of Wright Brothers, and it soon became clear that Machado, South Aviation, and their affiliates had emptied the escrow accounts associated with the parties' investments. Several months later, a federal grand jury in Texas indicted Machado and others for using Wright Brothers, South Aviation, and other entities to run a Ponzi scheme enriching themselves at the expense of their investors.

The CCUR Entities sued Machado and South Aviation in Florida federal court to recover the funds they lost in the Ponzi scheme. They secured the appointment of a temporary receiver, who has been attempting to recover the embezzled funds. Volshteyn invited Serrano to have Aspen join in the Florida lawsuit, but Aspen declined.

Instead, Aspen filed a complaint against the CCUR Entities, Volshteyn, and JDS1 (collectively, Defendants) in Orange County Superior Court, asserting claims for breach of fiduciary duty, professional negligence, professional malpractice, fraud, negligent misrepresentation, violation of the federal Investment Advisers Act, and

4

violations of the Corporations Code.[1] The gist of Aspen's complaint is that Defendants induced Aspen to invest in the Ponzi scheme through misrepresentations, omissions, and exaggerations about the investment. Aspen did not name Edidin, Machado, South Aviation, or Wright Brothers as defendants.

Specially appearing, Defendants filed a motion to quash service of summons for lack of personal jurisdiction, asserting Aspen had not alleged minimum contacts between Defendants and California. In support of their motion, Defendants presented evidence that the CCUR Entities are both organized under Delaware law and have their principal places of business in Texas, that Volshteyn is a resident of Texas, and that JDS1 is organized under Delaware law and has its principal place of business in New Jersey. Defendants also presented evidence that indicated they conduct all their business outside of California; they have no offices, facilities, assets, or real estate in California; they are not registered to conduct business in California; they do not hold any licenses, permits, certificates, bank accounts, securities accounts, or telephone numbers in California; and they have no registered agents in California.

To establish Defendants did not know Aspen and Serrano were California residents during the relevant period, Defendants submitted a declaration from Volshteyn, who attested he "did not realize that Aspen was a California company, or that any of the other individuals [he] was emailing with might have been located in California at the time." Defendants also submitted a declaration from Julian Singer, the sole member of JDS1, who attested that JDS1's "only communication" with Aspen were e-mails about the finder's fee agreement, which did not include Aspen's residence information.

---

[1] Defendants removed the action to federal court, but Aspen filed an amended complaint omitting the federal claim and then successfully moved to remand the case to state court.

5

Aspen opposed Defendants' motion to quash and sought leave to take jurisdictional discovery. In support of its opposition, Aspen relied in part on an August 2020 e-mail exchange between Serrano and Volshteyn in which Volshteyn asked for Aspen's address for the purpose of obtaining a certificate of insurance, and to which Serrano responded that Aspen's address was 114 Pacifica, Suite 310, Irvine, California 92618.

After hearing oral argument, the trial court granted Aspen's request for leave to take jurisdictional discovery, set a supplemental briefing schedule, and continued the hearing on the motion to quash. Aspen retained new counsel who substituted into the case in February 2022 and served written discovery requests on Defendants the next day.

Defendants objected to much of Aspen's jurisdictional discovery. In March 2022, Aspen filed an ex parte application to continue the hearing on Defendants' motion to quash and to shorten time on Aspen's anticipated motion to compel further discovery responses. The trial court denied relief, finding Aspen had "failed to act diligently" notwithstanding its change of counsel.

The parties submitted their supplemental briefing based on jurisdictional discovery in April 2022. In its supplemental opposition, Aspen asserted Defendants knew Aspen was located in California, as reflected by the fact that Serrano listed his Irvine, California address in his signature block on the executed NDA, and the fact that Volshteyn admitted at deposition that he requested Aspen's address and then forwarded that California address to a third party.

After hearing oral argument, the trial court granted Defendants' motion to quash, finding that Aspen had "not met its burden to show by a preponderance of the evidence, the factual basis justifying the exercise of specific jurisdiction over Defendants." Aspen appealed.

6

## DISCUSSION

1.     *General Principles*

"A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to demonstrate facts establishing a basis for personal jurisdiction.  [Citation.]  If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167-1168 (*HealthMarkets*).)

An order granting a motion to quash service of summons is directly appealable.  (Code Civ. Proc.,[2] § 904.1, subd. (a)(3).)  "If there is no conflict in the evidence, the question whether a defendant's contacts with California are sufficient to justify the exercise of personal jurisdiction . . . is a question of law that we review de novo."  (*HealthMarkets, supra,* 171 Cal.App.4th at p. 1168.)  But if there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings for substantial evidence, drawing all reasonable inferences in support of the court's order.  (*Ibid.*; *Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266–267.)

California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States."  (§ 410.10.) The United States Constitution permits a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'"  (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; see *Snowney v. Harrah's Entertainment, Inc*. (2005) 35 Cal.4th 1054, 1061.)  Under the minimum contacts test, courts ask "whether the 'quality and nature' of the defendant's

_____

[2]     All further undesignated statutory references are to this code.

7

activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State."  (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92.)

There are "two types of personal jurisdiction:  'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." (*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.* (2017) 582 U.S. 255, 262 (*Bristol-Myers*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).)

A nonresident defendant is subject to a forum's general jurisdiction if its contacts in the forum state are "'substantial . . . continuous and systematic.'"  (*Vons, supra,* 14 Cal.4th at p. 445.)  A court with general jurisdiction may hear any claim against that defendant, even if all the incidents underlying the claim occurred in a different state. (*Bristol-Myers*, *supra,* 582 U.S. at p. 262.)

Aspen does not contend Defendants are subject to California's general jurisdiction.  We therefore need only determine whether specific jurisdiction exists.

"Specific jurisdiction . . .  covers defendants less intimately connected with a State, but only as to a narrower class of claims.  The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.'  [Citation.]  The defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.'  [Citation.]  The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'"  (*Ford Motor Co. v. Mont. Eighth Judicial Dist. Court* (2021) 592 U.S. __ [141 S.Ct. 1017, 1024].)

"When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation."'"  (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.)  A nonresident defendant is only subject to the forum's specific jurisdiction if three requirements are met:  (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum;

and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Ibid.*)

"A defendant *purposefully* avails itself of a forum's benefits if it intentionally directs its activities at a forum such that, by virtue of the benefits the defendant has received, it should reasonably expect to be haled into the forum's courts. [Citation.]  By focusing on the defendant's purpose, this requirement ensures defendants will not be haled into a jurisdiction solely because fortuitous or attenuated contacts or because of the unilateral activity of another party." (*Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 294–295 (*Farina*).)

   2.    *Application*

Applying those principles here, we conclude the trial court correctly determined Aspen did not carry its burden of establishing personal jurisdiction over Defendants.

It is undisputed Defendants are not residents of California:  the CCUR Entities are organized under Delaware law and have their principal places of business in Texas, Volshteyn is a resident of Texas, and JDS1 is organized under Delaware law and has its principal place of business in New Jersey.  Defendants conduct all their business outside of California; they have no offices, facilities, assets, or real estate in California; they are not registered to conduct business in California; they do not hold any licenses, permits, certificates, bank accounts, securities accounts, or telephone numbers in California; and they have no registered agents in California.

The controlling question then is whether Defendants, in allegedly inducing Aspen to invest in the aircraft financing opportunity, purposefully availed themselves of the privilege of conducting activities in California.  We conclude they did not.

To begin with, there is conflicting evidence as to whether Defendants knew Aspen and Serrano were California residents when they were discussing the investment opportunity in 2020.  The parties never met in person, in California or elsewhere; all of

9

their communications were by e-mail. Some of those e-mail communications did indicate Aspen and Serrano were located in California; for example, Serrano inserted a signature line on his NDA with CCURH listing an address in Irvine; Aspen's representative Jim Matthews sent Volshteyn several e-mails that included his Irvine business address in his signature block; and Serrano gave Volshteyn Aspen's Irvine address in an e-mail concerning certificates of insurance. But testimonial evidence suggests Defendants were nevertheless unaware of Aspen's location. Volshteyn insists he did not realize Aspen was a California company at the time of the transaction; he claims he was not paying attention to the address listed in the e-mails, and he assumed Aspen was located in Colorado given its name. Julian Singer of JDSI similarly attests that JDSI's only communication with Aspen was the e-mail exchange about the finder fee agreement, which contains no address information for Aspen.

Because there is a conflict in the evidence as to whether any of the Defendants knew Aspen and Serrano were residents of California, we review the trial court's implied factual finding that Defendants did not know Aspen's location for substantial evidence. (*HealthMarkets, supra*, 171 Cal.App.4th at p. 1168.) Under that standard, the above-described testimonial evidence by Volshteyn and Singer sufficiently establishes that Defendants were unaware Aspen and Serrano were California residents. (See *Elkman v. National States Ins. Co*. (2009) 173 Cal.App.4th 1305, 1313 [evidence of jurisdictional facts may be in the form of declarations].)

This finding could by itself support our affirmance of the trial court's order quashing the summons. (See *Farina, supra,* 50 Cal.App.5th at p. 290 [because out-of-state developers did not know where plaintiff investors lived, trial court correctly quashed service for lack of personal jurisdiction; "you do not purposefully avail yourself of California benefits if you do not know your actions somehow connect to California"].) But even if we were to assume arguendo that Defendants knew Aspen was a California

10

company, there would still be insufficient evidence that Defendants purposefully availed themselves of California benefits.

The fact that Aspen is a California company, without more, is not sufficient to confer personal jurisdiction over Defendants. (*Walden v. Fiore* (2014) 571 U.S. 277, 286 [personal jurisdiction must be based on the defendant's "own affiliation with the State, not based on the 'random, fortuitous, or attenuated' contacts he makes by interacting with other persons affiliated with the State"].) "[T]he plaintiff cannot be the only link between the defendant and the forum." (*Id.* at p. 285.)

For jurisdiction to exist, there must be "evidence the nonresident defendant expressly aimed or intentionally targeted his or her intentional conduct at the forum state." (*Burdick v. Superior Court* (2015) 233 Cal.App.4th 8, 25. There is no such evidence here.

Aspen insists in its brief and at oral argument that purposeful availment is established because Volshteyn sent Aspen the PowerPoint and other communications about the investment opportunity and facilitated the documents for Aspen's investment and reinvestment, CCURH entered into the NDA with Serrano, and JDS1 entered into the finder's fee agreement with Aspen. We cannot agree.

Although a forum does have "jurisdiction over defendants who reach out and create continuing relationships and obligations with the forum's residents" (*Farina, supra,* 50 Cal.App.5th at p. 299), "an individual's contract with an out-of-state party *alone* [cannot] automatically establish sufficient minimum contacts in the other party's home forum" (*Burger King Corp. v. Rudzewicz* (1985) 471 U.S. 462, 478). Instead, factors like "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing . . . must be evaluated in determining whether the defendant purposefully established minimum contacts within the forum." (*Id.* at p. 479; see, e.g., *Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 397-398 [ongoing contractual relationships supported a finding of purposeful availment]; *Gilmore*

11

*Bank v. AsiaTrust New Zealand Ltd.* (2014) 223 Cal.App.4th 1558, 1572 [purposeful availment occurred where defendant sent promotional materials to California resident, negotiated contract here, and invoiced and collected funds from California trust as part of "a scheme that contemplates an ongoing contractual relationship"].)

The evidence here suggests this was a one-time interaction between the parties, as opposed to a continuing relationship or a substantial economic connection. This was insufficient to confer personal jurisdiction on Defendants.

Aspen alternatively contends personal jurisdiction exists because Defendants "[p]artnered" with non-party Eric Edidin, a California resident, and purposefully directed their activities at California through Edidin. (See *Anglo Irish Bank Corp., PLC v. Superior Court* (2008) 165 Cal.App.4th 969, 974 ["activities that are undertaken on behalf of a defendant may be attributed to the defendant for purposes of personal jurisdiction if the defendant purposefully directed those activities at the forum state"].)

We are not persuaded. "[E]ven when a third party is involved, the focus of our inquiry remains on the *defendant's* actions and intent." (*Farina, supra*, 50 Cal.App.5th at p. 296.) There is no evidence that Volshteyn, the CCUR Entities, or JDS1 purposefully directed Edidin to do anything. To the contrary, it appears Edidin was acting on his own volition. Edidin attested in his declaration that Singer and Volshteyn did not ask him to solicit other investors for the transaction. And Volshteyn testified it was Edidin who approached Volshteyn to ask if Serrano could participate in the investment (not the other way around), and Volshteyn agreed as a favor. We accept the trial court's implicit finding that Defendants did not purposefully direct Edidin's conduct.

On these facts, exercise of jurisdiction over Defendants would be inappropriate. The trial court did not err in granting Defendants' motion to quash service of summons.

12

## DISPOSITION

The order is affirmed.  Defendants shall recover their costs on appeal.  (Cal. Rules of Court, rule 8.278(a)(1).)


GOETHALS, J.

WE CONCUR:


O'LEARY, P. J.


SANCHEZ, J.

13