Filed 3/13/25  R&R Life Is Amazing v. Abdullah CA4/3

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION THREE

| | |
|---|---|
| R&R LIFE IS AMAZING LLC et al.,<br><br>Plaintiffs and Appellants,<br><br>v.<br><br>RIAD ABDULLAH,<br><br>Defendant and Respondent. | G063153<br><br>(Super. Ct. No. 30-2022-01264056)<br><br>O P I N I O N |

Appeal from an order of the Superior Court of Orange County, Deborah C. Servino, Judge. Affirmed.

Law Office of Monica D. Dib and Monica Dib for Plaintiffs and Appellants.

Joseph S. Socher for Defendant and Respondent.

\*          \*          \*

This is an appeal from an order granting a motion to quash the service of a summons for lack of personal jurisdiction. We affirm. The plaintiffs failed to establish through admissible evidence that the defendant has sufficient minimum contacts with California to create personal jurisdiction.

FACTS

Joseph Dib and R&R Life Is Amazing LLC[1] (Plaintiffs) filed a verified complaint against Omar Daher, Riad Abdullah, and several others in 2022. Although the complaint is not in the appellate record, it reportedly alleges that Daher and the other defendants defrauded Dib of over $1.5 million in connection with a business deal related to the cultivation of medical marijuana in Humboldt County (the Bridgeville property).[2] The present appeal concerns just one of those defendants, Riad Abdullah.

Because the complaint is not in the record, we cannot say with certainty what it alleges about Abdullah's involvement in the scheme. However, according to a trial court minute order, the complaint's allegations

---

[1] R&R Life Is Amazing LLC's connection to this lawsuit is unclear from the appellate record. According to Plaintiffs' opening brief, Dib is the only member of this limited liability company.

[2] Our description of the complaint's allegations is derived from a declaration that Plaintiffs' counsel submitted in opposition to Abdullah's motion to quash. Although normally a verified complaint may be treated as a declaration for purposes of determining whether a plaintiff has established minimum contacts between a defendant and the State of California (*Van Buskirk v. Van Buskirk* (2020) 53 Cal.App.5th 523, 535), we cannot consider the contents of the complaint here because it is not in the record. We take this opportunity to repeat what has been often said: appellate counsel must "take great care to prepare a complete record." (*Protect Our Water v. County of Merced* (2003) 110 Cal.App.4th 362, 364.)

against Abdullah "are primarily in paragraph 40, which alleges that [Abdullah] advised Plaintiff that $9M had been deposited into his account in Arizona and that he would wire $4.5M to Plaintiff once [defendant Omar] Daher authorized release of the funds."

Specially appearing, Abdullah filed a motion to quash service of the summons for lack of personal jurisdiction, asserting Plaintiffs had not alleged minimum contacts between him and the State of California. In support of his motion, Abdullah filed a declaration that spelled out his lack of such contacts.

Plaintiffs did not include Abdullah's declaration in the appellate record, but according to both Abdullah's motion to quash and the trial court's August 2023 minute order, Abdullah attested that he has been a resident of Arizona since 1989; he has never lived in California; he has never had a license or identification card from California; he does not own and has never owned personal or real property in California; he does not own any businesses in California; he has never maintained a place of business in California; he does not have clients or work in California; he has not solicited and does not solicit business in California; he has never had a telephone listing in California; he has never opened a bank account in California; he has visited California about five times in his lifetime; he has never visited Humboldt County; and he has never worked in the cannabis industry or obtained cannabis licensing. Abdullah further attested that he has never met or spoken to Dib; he does not know Dib's telephone number; he has never texted Dib; and he was never served in California with any documents related to this case.

Plaintiffs' counsel took Abdullah's deposition on jurisdictional issues soon thereafter. At his deposition, Abdullah admitted to having met

3

codefendants Omar Daher, Doran Andry, Sad Thaher, and Salam Hamdan. He denied ever being Daher's business partner or having ever been involved in the business of growing marijuana with Daher at the Bridgeville property. He also denied receiving any money in 2022 from the sale of marijuana or receiving money from Daher in 2022.

Plaintiffs opposed Abdullah's motion to quash. They argued the trial court has general jurisdiction over Abdullah because he had a reported address in Irvine, California as of August 2021, and Abdullah had purposefully injected himself into the business deal in California, as evidenced by multiple text messages between him and Dib about the deal.

Dib submitted a declaration in support of the opposition, explaining that in October 2020, his long-time acquaintance, defendant Omar Daher, had told him about an investment opportunity that involved growing medical cannabis on a property in Bridgeville. According to Dib, Daher claimed his associates in that business deal, including Abdullah, would be in charge of purchasing the seeds, fertilization, and growing, harvesting, and transporting the cannabis, and Dib just needed to provide the funds for the purchase. Based on those representations, Dib believed Abdullah had traveled to the Bridgeville property many times.

Dib did not say he had ever met Abdullah in person. However, Dib claimed he had exchanged over 60 text messages with Abdullah, who had used a cell phone with the number (xxx) xxx-1130; Dib attached screenshots of some of those messages to his declaration.

As best we can tell, those screenshots are not in chronological order, and the first text message exchanged between Dib and the 1130 number does not appear to be included in the exhibit. Dib's declaration does

4

not explain how he first obtained the 1130 number, or why he believes the 1130 number belongs to Abdullah.

The individual texting from the 1130 number (which Dib saved to his contacts as "Riyad Arizona") said Abdullah had traveled to California in May and June 2022 to sell the marijuana and to assist with Daher's business deals, and he assured Dib he would wire him the money promised. Another text message included a screenshot of what appears to be a Wells Fargo bank statement in Abdullah's name, linked to a property in Chandler, Arizona.

In another text message from the 1130 number, the texter said he would call Dib from a different telephone because the 1130 number was under Daher's name. According to Dib's declaration, someone whom Dib took to be Abdullah then called Dib from a different number, and they spoke about the money that was owed to Dib. Again, Dib's declaration did not explain why Dib believed the caller was Abdullah.[3]

Abdullah filed a reply in support of his motion to quash and included a declaration in which he reiterated he never met or communicated with Dib in any manner, he never used the 1130 number, he never lived in California, and he had never been involved in the cannabis industry. Abdullah also filed extensive objections to the declarations submitted by Dib and his counsel, asserting among other things that many of the statements therein were inadmissible hearsay and lacked foundation or personal knowledge.

---

[3] Plaintiffs' counsel also submitted a declaration in opposition to Abdullah's motion, attaching excerpts from Abdullah's deposition as an exhibit.

After hearing argument, the trial court granted Abdullah's motion to quash, finding Plaintiffs had failed to meet their burden of proving minimum contacts between Abdullah and California. The court noted that "Plaintiffs primarily rely on multiple text messages that Dib claims Abdullah sent him regarding the alleged business deal. However, that evidence, like most of Plaintiffs' evidence, is inadmissible. Dib has never met Abdullah, and Plaintiffs never established that the phone number Dib was texting back and forth with belonged to Abdullah. Almost all the objections to Plaintiff Dib's declaration are sustained."

The trial court then ruled that none of the remaining admissible evidence—i.e., the portion of Dib's declaration concerning how he met Daher and the excerpts of Abdullah's deposition testimony—was sufficient to establish personal jurisdiction over Abdullah. The court found that general jurisdiction did not exist because Abdullah resides in Arizona and does not work, conduct business in, or own property of California. And it found specific jurisdiction did not exist because "[t]here is no admissible evidence to show that Abdullah participated in the alleged business deal, traveled to California for it, or received proceeds from it. He denies being involved in the alleged business deal and there is no evidence to show otherwise."

Plaintiffs filed a notice of appeal. Their arguments are limited to the trial court's evidentiary rulings on Dib's declaration and its findings on specific jurisdiction; they do not challenge the evidentiary rulings on Plaintiffs' counsel's declaration or contend Abdullah is subject to general jurisdiction in California.

6

# DISCUSSION

## I.

### GENERAL PRINCIPLES

"A plaintiff opposing a motion to quash service of process for lack of personal jurisdiction has the initial burden to demonstrate facts establishing a basis for personal jurisdiction." (*HealthMarkets, Inc. v. Superior Court* (2009) 171 Cal.App.4th 1160, 1167 (*HealthMarkets*).) "To meet this burden, a plaintiff must do more than make allegations. A plaintiff must support its allegations with 'competent evidence of jurisdictional facts.'" (*Rivelli v. Hemm* (2021) 67 Cal.App.5th 380, 393 (*Rivelli*).) That is, the plaintiff must show "by a preponderance of the evidence . . . that the defendant has purposefully availed itself of the forum and the plaintiff's claims relate to or arise out of the defendant's forum-related contacts." (*Ibid.*) "If the plaintiff satisfies that burden, the burden shifts to the defendant to show that the exercise of jurisdiction would be unreasonable." (*HealthMarkets,* at p. 1168.)

An order granting a motion to quash service of a summons is directly appealable. (Code Civ. Proc., § 904.1, subd. (a)(3).) "If there is no conflict in the evidence, the question whether a defendant's contacts with California are sufficient to justify the exercise of personal jurisdiction . . . is a question of law that we review de novo." (*HealthMarkets, supra,* 171 Cal.App.4th at p. 1168.) But if, as here, there is a conflict in the evidence underlying that determination, we review the trial court's express or implied factual findings for substantial evidence, drawing all reasonable inferences in support of the court's order. (*Ibid.*; *Thomson v. Anderson* (2003) 113 Cal.App.4th 258, 266–267.) We review the trial court's evidentiary

rulings for abuse of discretion. (*Geragos v. Abelyan* (2023) 88 Cal.App.5th 1005, 1021.)

California courts may exercise jurisdiction over nonresidents "on any basis not inconsistent with the Constitution of this state or of the United States." (Code Civ. Proc., § 410.10.) The United States Constitution permits a state to exercise jurisdiction over a nonresident defendant if the defendant has sufficient "minimum contacts" with the forum "such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" (*Internat. Shoe Co. v. Washington* (1945) 326 U.S. 310, 316; see *Snowney v. Harrah's Entertainment, Inc.* (2005) 35 Cal.4th 1054, 1061.) Under the minimum contacts test, courts ask "whether the 'quality and nature' of the defendant's activity is such that it is 'reasonable' and 'fair' to require him to conduct his defense in that State." (*Kulko v. California Superior Court* (1978) 436 U.S. 84, 92.)

There are "two types of personal jurisdiction: 'general' (sometimes called 'all-purpose') jurisdiction and 'specific' (sometimes called 'case-linked') jurisdiction." (*Bristol-Myers Squibb Co. v. Superior Court of Cal., San Francisco Cty.* (2017) 582 U.S. 255, 262 (*Bristol-Myers*); *Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 445 (*Vons*).)

A nonresident defendant may be subject to a forum's general jurisdiction if "his or her contacts in the forum state are 'substantial[,] . . . continuous and systematic.'" (*Vons, supra,* 14 Cal.4th at p. 445.) "A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different State." (*Bristol-Myers*, *supra,* 582 U.S. at p. 262.)

Plaintiffs do not contend Abdullah is subject to California's general jurisdiction. We therefore need only determine whether specific jurisdiction exists.

"Specific jurisdiction . . . covers defendants less intimately connected with a State, but only as to a narrower class of claims. The contacts needed for this kind of jurisdiction often go by the name 'purposeful availment.' [Citation.] The defendant . . . must take 'some act by which [it] purposefully avails itself of the privilege of conducting activities within the forum State.' [Citation.] The contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" (*Ford Motor Co. v. Montana Eighth Judicial Dist. Court* (2021) 592 U.S. 351, 359.)

"When determining whether specific jurisdiction exists, courts consider the "'relationship among the defendant, the forum, and the litigation."'" (*Pavlovich v. Superior Court* (2002) 29 Cal.4th 262, 269.) A nonresident defendant is subject to the forum's specific jurisdiction only if three requirements are met: (1) the defendant has purposefully availed itself of forum benefits with respect to the matter in controversy; (2) the controversy is related to or arises out of the defendant's contacts with the forum; and (3) the exercise of jurisdiction would comport with fair play and substantial justice. (*Ibid.*)

"A defendant *purposefully* avails itself of a forum's benefits if it intentionally directs its activities at a forum such that, by virtue of the benefits the defendant has received, it should reasonably expect to be haled into the forum's courts. [Citation.] By focusing on the defendant's purpose, this requirement ensures defendants will not be haled into a jurisdiction solely because fortuitous or attenuated contacts or because of the unilateral

9

activity of another party." (*Farina v. SAVWCL III, LLC* (2020) 50 Cal.App.5th 286, 294-295.)

## II.

### APPLICATION

Applying those principles here, we must determine whether there is substantial evidence to support the trial court's conclusion that Abdullah has not purposefully availed himself of the benefits and protections of California law. As the party opposing the motion to quash, Dib had the burden of producing competent evidence of jurisdictional facts. (*Rivelli, supra,* 67 Cal.App.5th at p. 393.) He did not carry that burden.

It is undisputed that Dib never met Abdullah, either in California or elsewhere. Plaintiffs' only evidence concerning Abdullah's alleged dealings in California was Dib's own declaration, which (1) attached screenshots of various text messages that Dib allegedly exchanged with Abdullah on the 1130 number, and (2) described a single telephone call from Abdullah. According to Plaintiffs, this evidence establishes Abdullah's involvement in the deal and his presence in California.

The trial court found this evidence was largely inadmissible, sustaining objections to 26 paragraphs of Dib's declaration and three exhibits: "Plaintiffs primarily rely on multiple text messages that Dib claims Abdullah sent him regarding the alleged business deal. However, that evidence, like most of Plaintiffs' evidence, is inadmissible. Dib has never met Abdullah, and Plaintiffs never established that the phone number Dib was texting back and forth with belonged to Abdullah. Almost all the objections to Plaintiff Dib's declaration are sustained."

We discern no abuse of discretion in that evidentiary ruling. A writing must be authenticated before it may be admitted into evidence. (Evid.

10

Code, § 1401, subd. (a).) "Authentication of a writing means (a) the introduction of evidence sufficient to sustain a finding that it is the writing that the proponent of the evidence claims it is or (b) the establishment of such facts by any other means provided by law." (*Id.*, § 1400.) The party offering the writing has the burden of offering sufficient evidence of its authenticity to sustain a finding of fact to that effect. (*Id.*, § 403, subd. (a)(3).) "Authenticity may be established by the contents of the writing, or other means, including circumstantial evidence, and the author's testimony is not required." (*People v. Calhoun* (2019) 38 Cal.App.5th 275, 313 (*Calhoun*).)

A party proffering screenshots of text messages as evidence must authenticate those messages. (See, e.g., *People v. Cruz* (2020) 46 Cal.App.5th 715, 730 [jury reasonably could have concluded from messages' content and the testimony of three witnesses that Facebook messages were in fact from defendant]; *Calhoun*, *supra,* 38 Cal.App.5th at pp. 314–315 [content of messages and detective's testimony sufficiently established text messages were in fact from defendant]; *People v. Perez* (2017) 18 Cal.App.5th 598, 621 [victim's testimony about screenshots of text messages laid sufficient foundation for their admissibility].)

Here, Dib did not lay a sufficient foundation to authenticate any of the text messages. His declaration did not explain how or from whom he obtained the 1130 number; it did not explain why he believed the 1130 number belonged to Abdullah, whom he never met; the text messages themselves (which are only excerpts from a longer chain and which are presented out of order) do not contain any sort of introductory message where the participating parties introduced themselves; and Dib did not proffer any third party records establishing who owns the 1130 number. In short, there was nothing in the record to enable the trial court to determine whether the

11

text messages were in fact sent by Abdullah. The same goes for the single phone call that Abdullah allegedly made to Dib from a different number. Dib concedes that he has never met Abdullah, and he did not explain how he could identify Abdullah's voice. We therefore find no abuse of discretion in the trial court's evidentiary rulings.[4]

After excluding the text messages and the majority of Dib's declaration, the remaining admissible evidence before the trial court supported granting Abdullah's motion to quash. In his supporting declaration, Abdullah swore that he resides in Arizona, he does not work or conduct business in California, he does not own real or personal property in California, he has never met or spoken to Dib, and he was not at all involved in the alleged business deal that is the subject of this lawsuit. And he testified during his deposition that he has never been Daher's business

---

[4] Plaintiffs also contend the trial court erred in making a "blanket ruling" on the evidentiary objections to Dib's declaration. (See, e.g., *Twenty-Nine Palms Enterprises Corp. v. Bardos* (2012) 210 Cal.App.4th 1435, 1449 [blanket ruling sustaining, without explanation, all 48 pages of objections to seven-page declaration, where multiple bases were cited for each objection, was an abuse of discretion]; *Nazir v. United Airlines, Inc.* (2009) 178 Cal.App.4th 243, 254-255 [blanket ruling sustaining 763 out of 764 objections without explanation was "manifest error"].) We disagree. We are not convinced the court's ruling constitutes a "blanket" sustaining of objections; the court sustained most but not all objections, which suggests the court considered each objection individually.

Plaintiffs also complain the trial court did not provide any reasoning for sustaining Abdullah's evidentiary objections. Again, we must disagree. The court's minute order explains that "Dib has never met Abdullah, and Plaintiffs never established that the phone number Dib was texting back and forth with belonged to Abdullah." As this language makes clear, the court found large portions of Dib's declaration were inadmissible due to lack of foundation.

partner or in the business of growing marijuana with Daher at the Bridgeville property; he also denied receiving any money in 2022 from the sale of marijuana or from Daher. Substantial evidence therefore supports the court's ruling that Plaintiffs failed to meet their burden of proving that minimum contacts exist between Abdullah and California so as to create personal jurisdiction.

DISPOSITION

The order is affirmed. Abdullah shall recover his costs on appeal. (Cal. Rules of Court, rule 8.278(a)(1).)


GOETHALS, J.

WE CONCUR:


MOORE, ACTING P. J.


GOODING, J.

13